[Cite as *State v. Williams*, 2014-Ohio-4883.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO


STATE OF OHIO,                          :        **O P I N I O N**

      Plaintiff-Appellee,             :

      - vs -                                   :        **CASE NO. 2013-T-0096**

CARL A. WILLIAMS, JR.,                 :

      Defendant-Appellant.          :


Criminal Appeal from the Niles Municipal Court, Case No. CRB 12 01122.

Judgment:  Affirmed.


*Terry A. Swauger*, Niles City Prosecutor, 15 East State Street, Niles, OH  44446 (For Plaintiff-Appellee).

*Jay Blackstone*, WPA Memorial Building, 132 South Broad Street, Suite 401-A, Canfield, OH  44406 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1}   This appeal is from the sentencing judgment in a criminal action before the Niles Municipal Court.  After a bench trial, appellant, Carl A.  Williams, Jr., was found guilty of violating a domestic violence protection order.  In asserting that the conviction must be reversed, appellant contests the trial court's denial of his motion for a new trial on the grounds that he was not afforded effective assistance of trial counsel.  For the following reasons, the trial court's ruling was warranted in light of the evidence presented at trial.

{¶2} Appellant and the victim lived together for approximately eight years and had one child. After their relationship ended and appellant moved from their residence, the victim instituted a domestic violence civil protection proceeding under R.C. 3113.31. In August 2012, that case resulted in a consent judgment/order of protection. Under the terms of the protection order, appellant was not permitted to enter, or interfere with, the victim's residence or place of business. Appellant was also not allowed to come within 100 feet of the victim. In addition, the terms of the protection order were also applicable to the couple's minor daughter.

{¶3} During the two-week period immediately after the protection order became effective, the victim sent appellant two emails in which she asserted that she intended to take any step necessary to stop him from ever seeing their daughter again. As part of the first email, she also bragged about how easy it had been to bring the civil protection proceeding against him, and how the domestic relations court seemed willing to believe anything she said.

{¶4} At some point in September 2012, the victim and her daughter moved to a new address in Trumbull County. The victim never invited appellant to come over to her new residence, but instead took steps to try to keep her new address a secret.

{¶5} On the evening of October 10, 2012, the victim contacted the Niles Police Department for assistance on two separate occasions. The first instance occurred while the victim was driving home from work with her daughter. In speaking to the police on her cell phone, the victim stated appellant was following her in his vehicle. As a result, an officer met the victim at a nearby gas station and then accompanied her to her home without incident. According to the victim, appellant stopped following her after she went to the gas station.

2

{¶6} After arriving at her residence, the victim quickly took her daughter inside and put her to bed. Upon returning outside, the victim told the officer that everything appeared to be alright, and that it was alright for him to leave. However, once the officer left and the victim began to look around the interior of her home, she saw a number of clear indications that someone had broken into the residence. Specifically, she noted that: (1) her bedroom and bathroom were ransacked; (2) the electrical cords for her washer and dryer were both cut; (3) a chef's knife was sitting on her kitchen counter; and (4) certain derogatory words were written on some of the walls. In light of these discoveries, the victim again called the police for assistance. Multiple officers were dispatched to the residence, and an investigation into the break-in ensued.

{¶7} Even though a thorough search of the home's interior was conducted, no fingerprints were found inside the structure. But a set of fingerprints and accompanying palm print was found on the outside of a basement window at the rear of the structure. A special state crime scene investigator was summons to lift the prints from the window, and the items were sent to a state laboratory for testing. Comparing the lifted prints to an existing set of appellant's fingerprints, a forensic scientist subsequently determined that appellant had made the prints on the basement window.

{¶8} Appellant was charged with two criminal offenses, the first based upon the allegation that he followed the victim in his vehicle, and the second predicated upon the allegation that he broke into her residence. Specifically, as to the second allegation, he was charged with recklessly violating the terms of a civil protection order, a first-degree misdemeanor under R.C. 3113.31.

{¶9} A one-day bench trial went forward in May 2013. The state primarily relied upon the testimony of the victim and the forensic scientist who performed the testing on

3

the "window" prints. In response, appellant presented the testimony of three witnesses and testified on his own behalf. Through this testimony, appellant tried to establish an alibi as to his whereabouts for the entire day of October 10, 2012; i.e., his evidence was intended to show that he was with at least one of his three witnesses throughout the day in question.

{¶10} In cross-examining appellant, the state asked him how his prints could be found on the basement window of the victim's new home when supposedly he did not even know her new address. In response, appellant stated that it was his belief that the victim planted his prints upon the window herself. In support, he explained that, while taking classes at a local university for a criminal justice degree, he was given a project involving the "lifting" of fingerprints. He further explained that, since they were residing together at the time, she had helped him with the project. Thus, according to appellant, the victim knew the procedure for transferring prints from one surface to another.

{¶11} In rebuttal, the state recalled the forensic scientist, who testified that, even though it was possible to transfer a fingerprint from one object to another, it was difficult to do and could be detected in most instances. The forensic scientist further stated that, in her opinion, such a transfer had not occurred in this case.

{¶12} At the close of the state's case, the trial court granted appellant's Crim.R. 29 motion for dismissal as to the charge based upon the "vehicle" allegation. At the end of the entire case, though, the court found him guilty of violating the existing protection order, based upon the incident at the victim's residence. A separate sentencing hearing was then scheduled for July 2013. During the interim period, appellant hired new trial counsel and filed a motion for a new trial. As one basis for the motion, he asserted that he was denied effective assistance of counsel during the trial because his first attorney

4

did not attempt to introduce into evidence copies of the two emails the victim sent to him approximately fifty days before the alleged break-in.

{¶13} After the sentencing hearing was eventually held in August 2013, the trial court issued its final judgment imposing a jail term of ninety days and a fine of $250. As part of that judgment, the trial court also overruled appellant's motion for a new trial and granted a stay of the jail term pending appeal to this court.

{¶14} In challenging the denial of his motion for a new trial, appellant raises two assignments of error for consideration:

{¶15} "[1.] The trial court committed prejudicial error by not granting a hearing on the Appellant's motion for a new trial.

{¶16} "[2.] The trial court committed prejudicial error by not making findings of fact and conclusions of law in its entry overruling Appellant's motion for a new trial."

{¶17} As an initial point, this court would note that, as part of his argumentation under both assignments, appellant asserts that his post-trial motion before the trial court must be characterized as a petition for postconviction relief under R.C. 2953.21. While not expressly stated in his brief, appellant's assertion appears to be based upon the fact that his motion alleged a violation of his Sixth Amendment right to effective assistance of trial counsel.

{¶18} As noted above, appellant's post-trial motion was captioned as a request for a new trial. Crim.R. 33(A) expressly provides for a motion for a new trial in a criminal proceeding. Although the nature of the relief sought under a Crim.R. 33 motion may be similar to the relief often sought in a postconviction petition, "the Crim.R. 33 procedures for a new trial exist independently from the R.C. 2953.21 procedure for postconviction relief." *State v. Caulley*, 10th Dist. Franklin No. 12AP-100, 2012-Ohio-2649, ¶18.

5

{¶19} Crim.R. 33(A) sets forth six possible grounds for a new trial, and provides, in pertinent part:

{¶20} "A new trial may granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

{¶21} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

{¶22} "* * *

{¶23} "(5) Error of law occurring at the trial; * * *."

{¶24} In applying these provisions, the appellate courts of this state have held that a claim of ineffective assistance of trial counsel can form a viable basis for a motion for a new trial under Crim.R. 33. *See, e.g., Caulley*, at ¶19. "Although a petition for post-conviction relief may provide a more effective and appropriate vehicle for the assertion of an ineffective assistance of counsel claim, a defendant may validly assert the denial of effective assistance of counsel as the basis for new trial pursuant to Crim.R. 33(A)(1) or (A)(5)." *State v. Lordi*, 140 Ohio App.3d 561, 569 (7th Dist.2000).

{¶25} Appellant's motion for a new trial was not predicated upon an alleged off-the-record discussion between himself and his first trial attorney. Rather, he asserted that, despite the fact he gave copies of the two emails to his first attorney long before his trial began, the attorney never referenced the emails during the proceeding. Moreover, appellant's motion was accompanied not only by copies of the two disputed emails, but also by appellant's affidavit in which he swore to the authenticity of the two copies. Thus, not only did appellant choose to proceed under a Crim.R. 33 motion for a new trial, but his choice of procedural vehicle did not inhibit his ability to properly assert

6

his "ineffective assistance" claim before the trial court.

{¶26} Under his second assignment, appellant contends that the trial court erred in not issuing findings of fact and conclusions of law to explain the basis of its decision to deny his motion. In support, he notes that R.C. 2953.21(C) and (G) expressly mandate the issuance of factual findings and legal conclusions when a postconviction petition is denied. However, since appellant did not submit a postconviction petition, R.C. 2953.21 has no application. Furthermore, "[a] trial court has no duty to issue findings of fact or conclusions of law when it denies a Crim.R. 33 motion for a new trial. *State ex rel. Collins v. Pokorny*, 86 Ohio St.3d 70, 70, * * * (1999), * * *." *State v. McIntyre*, 9th Dist. Summit No. 26677, 2013-Ohio-2077, ¶6. Accordingly, appellant's second assignment is without merit.

{¶27} Turning back to the first assignment of error, appellant maintains that the trial court erred in rendering its decision on his motion for a new trial without conducting a hearing on its merits. He submits that a hearing was justified because his evidentiary materials, i.e., the copies of the emails, contained sufficient operative facts to establish that the actions of his original counsel during his trial fell below the standard for effective assistance. Specifically, appellant asserts that the emails should have been introduced into evidence because they tended to show the victim was willing to lie in order to maintain bogus legal proceedings against him. Based upon this, he argues that the emails would have bolstered his contention that the victim planted his fingerprints upon the window so that he would be wrongfully charged with violating the protection order.

{¶28} As a general proposition, the decision to grant or deny a new trial under Crim.R. 33(A) lies within the trial court's sound discretion; thus, an abuse of discretion must be shown before the decision will be reversed on appeal. *State v. Foti*, 11th Dist.

7

Lake No. 2009-L-163, 2010-Ohio-5931, ¶78. In the context of a motion for a new trial, an abuse of discretion occurs when the trial court acts in a manner that is unreasonable, arbitrary or unconscionable; a mere error of law or judgment is not sufficient. *State v. Hoffman*, 11th Dist. Lake No. 2001-L-022, 2002-Ohio-6576, ¶9, citing *State v. Clark*, 71 Ohio St.3d 466, 470 (994). Similarly, the decision to conduct an evidentiary hearing on a Crim.R. 33(A) motion is a matter within the trial court's discretion. *Foti*, at ¶78

{¶29} As to the standard for determining whether a criminal defendant has been denied effective assistance of trial counsel, this court has stated:

{¶30} "The Ohio Supreme Court has held that '(c)ounsel's performance will not be deemed ineffective unless and until counsel's performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' *State v. Bradley* (1989), 42 Ohio St.3d 136, * * *, at paragraph two of the syllabus, following *Strickland v. Washington* (1984), 466 U.S. 668, * * *. Moreover, '"a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. (* * *) If it is easier to dispose of an ineffectiveness clam on the ground of lack of sufficient prejudice, (* * *) that course should be followed."' Id. at 143, quoting *Strickland*, 466 U.S. at 697. To establish prejudice, a defendant must show 'that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' Id. at paragraph three of the syllabus." *State v. Griesmar*, 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶26.

{¶31} In this case, the record supports the conclusion that the introduction of the victim's two emails would not have had any effect upon the outcome of appellant's trial. To the extent that the victim essentially admitted in the emails that she previously had

been willing to make false statements in legal proceedings to obtain the protection order or keep appellant from seeing their daughter, the emails were obviously pertinent to the victim's credibility as a witness. However, the outcome of the case did not turn upon the believability of the victim's testimony. Instead, the credibility of the forensic scientist's testimony was the controlling factor in determining appellant's guilt or innocence.

{¶32} As part of the forensic scientist's initial testimony during the state's case-in-chief, she stated that the results of her analysis of the prints lifted from the basement window unequivocally demonstrated that they belonged to appellant. As noted above, in testifying on his own behalf, appellant did not try to challenge the fact that his prints were on the window; rather, he stated that it was his belief the victim had "planted" the prints on the window herself in an attempt to frame him for the break-in. After appellant rested his case, the state recalled the forensic scientist in rebuttal.

{¶33} When initially asked if it was generally possible to transfer fingerprints in the manner described by appellant, the forensic scientist stated that, even though it was difficult to do without detection, it was feasible to move a fingerprint from one object to another. However, after being prompted by the prosecutor, the forensic scientist gave a detailed explanation regarding why the transfer of fingerprints is very difficult. First, she indicated that such a transfer would only be possible if the surface of the original object containing the prints was similar in nature to the window. Second, she stated that, since the three primary fingerprints lifted from the basement window had originally been made simultaneously, it would be difficult to keep the special relationship and the arrangement of the fingers consistent during the transfer. Third, she emphasized that the nature of a fingerprint is such that a transfer usually cannot be done without some form of smearing or alteration of the background material on the new surface:

9

{¶34} "Also, fingerprints are very fragile. They are made up of 99% water. It is the residue that is left on your skin that is left behind when you are touching an item. So there would have to be a sufficient amount of that residue, whatever it is, whether it is sweat, or oil left behind on the original surface that you would be able to capture those in some sort of lifting mechanism, say a piece of tape[,] without smearing or smudging those originally when you are lifting them. You are going to press that tape down. You are going to be smearing that residue. You would have to be able to lift those impression off that first item and then still have enough residue on that tape that you now lifted onto your second item that you are trying to place them on and leave behind enough residue that they would be developed again with powder in this case. These have some background noise, these lifts that I examined. So there is the ridge detail and then there is some dirt, what appears to be dirt in the background. If these impressions had been lifted by a piece of tape that already had friction ridge impressions on it, the tape just like you use tape to remove lint off of your clothing, it is going to pull away whatever is on that surface. In this case any dirt or dust that may have been on that surface originally which would be evident in these lifts. There would have been a void or lack of dust.

{¶35} "Q. What you are saying when the fingerprints go on the window, a hand fingerprint you use all the dirt around the fingerprint?

{¶36} "A. Correct. Since your ridges are 3D what is coming in contact with that window is just your friction ridge skin.

{¶37} "Q. Whereas if someone had a piece of tape with fingerprints on it on the window, it might leave the fingerprint behind but all the dirt around those fingerprints would be picked up off the window and there would be no dirt between the fingerprints.

**{¶38}** "A. Correct."

**{¶39}** In the remainder of her rebuttal testimony, the forensic scientist again said that when the transfer of a fingerprint is attempted outside the laboratory setting, it can usually be detected as a result of the presence of certain indicators. She further stated that, even when she has tried in the past to transfer a fingerprint in a laboratory setting, the "planted" print is still detectable because the impression on the second object is not as clear as the original impression. In light of this testimony, the prosecutor asked the forensic scientist to give her opinion as to whether the fingerprints found on the victim's basement window were genuine:

**{¶40}** "Q. Based upon your experience in the lab and your evaluation on this case, could these prints have been transferred from some other surface to that window?

**{¶41}** "A. In my personal opinion, I don't believe so. Not easily."

**{¶42}** Although the forensic scientist initially acknowledged that it was feasible to transfer fingerprints in the manner appellant referenced in his testimony, she ultimately concluded that the fingerprints on the basement window were not transferred or planted there as part of a scheme to frame him. This conclusion was based upon the particular characteristics of the prints lifted from the window, i.e., the fact that dirt was lifted along with the prints, and the extreme difficulty of transferring any fingerprints in any setting. Thus, in order for appellant's "transfer" testimony to have any credibility, the trier of fact would have to believe that a person who had performed the procedure once became so efficient at the transfer of fingerprints that she was able to trick a forensic scientist who had a master's degree and had been working for the state crime lab for over two years. In light of the forensic scientist's testimony, the trial court could justifiably conclude that the "transfer" theory was incredible under the facts of this case.

11

{¶43} Even when the two emails attached to appellant's motion for a new trial are construed in a manner most favorable to him, they only demonstrate that the victim was capable of telling lies to the authorities about appellant. However, the emails were not relevant to the substance of the forensic scientist's testimony. Therefore, since the outcome of the case turned upon the credibility of the forensic scientist's testimony as to the fact that appellant's fingerprints on the basement window were genuine, the failure to introduce the emails into evidence did not affect the trial's outcome inasmuch as the trial court found appellant guilty of violating the protection order. For this reason, even if the performance of appellant's original trial counsel fell below the objective standard for reasonable representation, appellant was still not denied his Sixth Amendment right to effective assistance of counsel.

{¶44} Pursuant to the foregoing analysis, the trial court acted within the scope of its sound discretion in denying appellant's motion for a new trial without conducting an evidentiary hearing on the matter. Accordingly, appellant's first assignment likewise is without merit.

{¶45} The judgment of the Niles Municipal Court is affirmed.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

12