[Cite as *State v. Young*, 2019-Ohio-912.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-03-047 |
| | : | O P I N I O N |
| - vs - | | 3/18/2019 |
| | : | |
| DUSTIN M. YOUNG, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2017-04-0695

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Repper-Pagan Law, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for appellant

**HENDRICKSON, J.**

{¶ 1}   Appellant, Dustin M. Young, appeals from his convictions in the Butler County Court of Common Pleas for gross sexual imposition and abduction.  Young further appeals the trial court's denial of his motion for leave to file a motion for new trial.

{¶ 2}   On April 26, 2017, Young, a police officer employed by a public university's police department, was indicted on one count of gross sexual imposition in violation of R.C.

2907.05(A)(1), a felony of the fourth degree (count one); one count of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the second degree (count two); and two counts of abduction in violation of R.C. 2905.02(A)(2), felonies of the third degree (counts three and four). The charges arose out of three separate incidents occurring during the fall of 2016. Counts one and two related to an incident in which it was alleged that Young had sexual contact by means of force or the threat of force with K.K., a female coworker employed as an emergency dispatcher. Young used his arm to hook K.K. between her legs, pull her down onto his lap, and while holding K.K. on his lap, rubbed his arm on her vagina and grabbed one of her breasts with his hand for the purpose of sexual arousal and gratification. Count three related to a second incident, in which it was alleged that Young abducted K.K. while the two were at work. Young grabbed K.K. and pushed her back against lockers, thereby placing K.K. in fear. Finally, with respect to count four, on or about November 14 or 15, 2016, Young was alleged to have abducted K.K. a second time at work. Young grabbed K.K. in a manner that caused her to hit her head on a metal book case before pushing her back and pinning her against some lockers, thereby placing her in fear.

{¶ 3} Young pled not guilty to the charges and, in October 2017, a three-day bench trial was held. At trial, K.K. testified she and Young began working together more than five years ago. The two had exchanged their private cellphone numbers so that personal and job-related text messages could be exchanged. K.K. explained that she and Young had become friends but, at some point in time, the nature of their relationship changed. According to K.K., it "got to the point where [Young] wanted more than I did." Young started sending K.K. "inappropriate" text messages. K.K. did not approach her superiors at work because she felt she could handle things. However, sometime after May 2016, Young became more aggressive. On one occasion, Young grabbed K.K.'s buttocks when she walked by him at work.

- 2 -

{¶ 4} Regarding counts one and two, K.K. testified that on one evening in the fall of 2016, while in the communications center at work, Young grabbed her and pulled her onto his lap. According to K.K., she went to pick up papers from a printer and Young "put his right arm between [her] legs, to where his hand was on the back of [her] butt and his arm was up between [her] legs." Young pulled her to the chair he was sitting on and then, using his left hand, grabbed her shoulder to spin her around before pulling her down onto his lap. K.K. stated that Young's arm between her legs was moving and his forearm rubbed her genitalia in both a back-and-forth and side-to-side motion. His hand that was over her shoulder was touching her breast and he was biting at and trying to kiss the back of her neck. Young asked K.K., "When are you going to let me do this to you outside of work?" K.K. told Young to "let go" before pushing off of him and going back to her own work station.

{¶ 5} A few weeks later, the incident relating to count three occurred. K.K. testified she was entering the communications room after going to the restroom when Young, who was standing near some lockers, grabbed her by her shoulders and upper arms, spun her around, and pushed her up against the lockers. K.K. testified Young tried to kiss her and again asked her when she was going to allow him to do these things to her outside of work. Young used his body weight to keep her against the lockers, and K.K. stated she felt "trapped," "scared," and "mad."

{¶ 6} K.K. then testified about the incident relating to count four, which occurred while she was working third shift on November 14, 2016. K.K. testified that as she walked into the communications center after going to the breakroom, Young grabbed her, causing her head to hit a metal bookshelf. Young then spun her around, pushed her up against the lockers, and pinned her there using his body weight and holding onto her arms. Young told K.K., "I know you like to be manhandled," and he again asked her when she was going to let him do

this to her outside of work. K.K. testified she was "really scared" during this event, as she "didn't know if it was ever going to stop or how bad it might get."

{¶ 7} K.K. explained that no one else was present when the incidents described above occurred and she did not immediately report Young's conduct. Eventually, K.K. told her superior about the incidents and she provided him with a written statement on November 22, 2016.

{¶ 8} K.K. also gave a statement to two city of Hamilton police detectives on November 22, 2016. On cross-examination, K.K. acknowledged that during her interview Detective Jon Richardson and Detective Mark Nichols asked her whether Young had ever touched her genitalia or breasts, and she responded "no." However, K.K. explained that she believed the detectives' question was asked to find out if there were other incidents in addition to those she had already disclosed to the officers. K.K. further acknowledged that she told the detectives that Young "never touched [her] inappropriately sexually." She also admitted that notes describing the offenses to the university's "OEEL" office did not indicate Young touched her breasts or that when Young's forearm was between her legs, he was moving it to rub against her genitalia. Finally, on cross-examination, K.K. acknowledged that on October 29, 2016, she went to a college hockey game and stood next to Young for the duration of the game. Young had purchased a hockey shirt for her to wear but she denied wearing it to the game.

{¶ 9} K.K. also testified about the text messages she received from Young. Although Young had sent her a number of text messages on her personal cell phone, K.K. had not saved the messages. Rather, she had deleted the messages from Young. However, she provided her cell phone to law enforcement and they were able to recover some of the text messages she and Young had exchanged from April 2016 through November 2016. In the texts sent by Young, he frequently called K.K. "baby" and asked how her day was going. On

October 24, 2016, Young sent K.K. a message stating "Your ass is amazing. I want to feel it again very soon." Then, on November 5, 2016, the following text messages were exchanged:[1]

> YOUNG (3:54:13 AM): I know baby. It's no big deal but I'm going to steal a big hug and a few of your sexy or two for it. Hehe
>
> K.K. (3:54:58 AM): Your going to take my sexiness!
>
> YOUNG (3:56:02 AM): Lol feel of your sexy ass!! It's hard…. to text and drive.
>
> K.K. (3:57:10 AM): I know
>
> Young (4:00:59 AM): Are you alright with that?
>
> K.K. (4:01:30 AM): Depends on what that means
>
> YOUNG (4:02:44 AM): I thought about pushing you over my desk and getting a really good feel
>
> K.K. (4:03:25 AM): Now that's a bit much
>
> YOUNG (4:04:07 AM): That's just a little bit much?
>
> YOUNG (4:06:35 AM): I will try not to cross the line to much.
>
> K.K. (4:07:48 AM): Again, uh huh

{¶ 10} Detective Richardson testified about his investigation of K.K.'s claims. Richardson noted that Young was much larger in stature than K.K. He approximated that Young was 6' 2" tall and weighed around 250 pounds while K.K. was only "5-ish" feet tall and weighed between 120 and 130 pounds.

{¶ 11} Richardson explained that Young was interviewed on November 28, 2016. The

---

1. Testimony from trial demonstrated that the time stamps on the text messages recovered from K.K.'s phone were for "Greenwich Mean Time or GMT or UTC minus zero." To convert the time to eastern standard time, accounting for daylight savings time, four hours had to be subtracted. This meant that the texts set forth in the body of the opinion were sent and received between 11:54 p.m. on November 4, 2015 and 12:07 a.m. on November 5, 2016.

interview was recorded, and the recording was played at trial. During the interview, Young admitted he had a "friendship" with K.K. but denied that any sexual contact between the two of them had occurred. Young acknowledged that both he and K.K. sent inappropriate and flirtatious texts, including K.K. sending him photographs of herself in her underwear and bra, but he was unable to produce the text messages or photographs as he had deleted them and had recently gotten a new phone.

{¶ 12} Richardson was cross-examined about his November 22, 2016 interview of K.K. Richardson testified that K.K. was specifically asked whether Young had ever touched her breasts or vagina, and K.K. stated that Young never did anything physically inappropriate with her.

{¶ 13} Detective Walter Schneider, a digital forensic examiner, testified that he specializes in the recovery of data and extraction of evidence from computer and cellphone devices. On December 23, 2016, using a "Cellebrite" program, Schneider was able to conduct an advanced logical extraction of deleted data from K.K.'s cellphone. Schneider recovered some deleted text messages sent between Young and K.K. However, as Schneider explained, not all deleted material on K.K.'s phone could be recovered as "[s]ome things [were] overwritten" by new data after being deleted. Schneider stated he was not able to recover any data from Snapchat.

{¶ 14} Following Schneider's testimony, Young moved for acquittal pursuant to Crim.R. 29. His motion was denied. Thereafter, he presented testimony from officers he worked with in the university's police department. Sergeant Andrew Rosenberger testified that he was aware that Young purchased a hockey shirt for K.K. and that she had worn it to a game held on October 29, 2016. After the game, K.K., Young, and Rosenburg had returned to the university's police station. There, K.K. told Rosenberger that the shirt she had on was bought by Young. Further, that evening, K.K. came into his office and closed the door. K.K. told

Rosenberger that she was "just trying to make him jealous" and pointed to an area where Young had been standing.

{¶ 15} Young also presented testimony from Detective Nichols, who stated that when K.K. was interviewed on November 22, 2016, she did not provide specific details about her vagina or breasts being touched when she described the incident where Young pulled her onto his lap. K.K. did mention that Young reached between her legs and hooked her, which Nichols "took * * * as a possibility" that he rubbed her vagina, but K.K. herself did not state that Young rubbed her vagina by moving his arm up and down or back and forth.

{¶ 16} On October 13, 2017, after hearing the foregoing testimony, the trial court found Young guilty of gross sexual imposition and abduction, as set forth in counts one and four, and not guilty of kidnapping and abduction, as set forth in counts two and three. The trial court journalized its verdict on October 18, 2017. The trial court then set the matter for sentencing.

{¶ 17} On December 13, 2017, prior to Young's sentencing but nearly two months after the court rendered its verdict, Young filed a motion for leave to file for a new trial based on an irregularity in the proceedings. Young, now represented by new counsel, indicated that after trial, on or about December 7 or 8, 2017, his original trial counsel was alerted to the existence of "new" photographic evidence consisting of a Snapchat photograph of K.K.[2] The photograph contains a banner across it that reads "More room to bend me over here" and shows K.K. with her top lifted and her bare breasts exposed. Although this photograph is referred to as "new photographic evidence," Young's original trial counsel acknowledged that the photograph had been provided to the defense during discovery. However, Young's

_____

2. Young was represented by three attorneys at trial. Following the court's guilty verdict, but before sentencing, Young retained new counsel to handle his motion for leave to file for a new trial. Young's "new counsel" also represents him on appeal.

original trial counsel claimed they were "unaware of it until after judgment" and that Young had not been informed of the photograph's existence until December 7, 2017.

{¶ 18} In support of his motion for leave to file a motion for new trial, Young submitted four affidavits, of which three were from his original trial attorneys and one was from his wife.[3] In the affidavits from his trial attorneys, Young's attorneys state that the "new photograph had a date stamp of 7 November 16," that the "new photograph was close in time with a text message the court relied upon in convicting [Young] for his charged offenses" and the photograph was "not considered while consulting with [Young] regarding defense theories or for impeachment purposes." Young's lead trial attorney's affidavit states that upon receiving the "new photograph," he reached out to the prosecutor, who "indicated the picture was not new and had been provided in discovery in the phone data dump. * * * Over the weekend, I reviewed the discovery and found the photograph – which I had not seen before."

{¶ 19} Young's wife's affidavit states that in December 2017, she accessed Young's Snapchat account and discovered that Young and K.K. were friends on Snapchat. She further stated that on October 31, 2016 and November 19, 2016, K.K. and Young exchanged private Snapchat messages with one another. According to Young's wife, based on her experience with Snapchat, she knew that "Snapchat images disappear after a certain time, that the time the image will remain visible is represented by a number found at the top of the image, that a sent image can be saved to the recipient's Snapchat program or screenshotted by the recipient, and that the sender can include a message with the sent image that is depicted over the top of the sent image." Attached to Young's wife's affidavit were images of

---

3. We note that on February 2, 2018, the trial court sealed the copies of the affidavits filed in support of Young's motion for leave to file a motion for new trial. The sealed affidavits were later referenced by the court at Young's sentencing hearing, held February 28, 2018. On February 27, 2019, pursuant to App.R. 9(E), the record on appeal was supplemented to include the affidavits filed under seal. *See State v. Young*, 12th Dist. Butler No. CA2018-03-047 (Feb. 27, 2019) (Entry Supplementing Record on Appeal).

Young's phone that showed K.K. and Young were friends on Snapchat.

{¶ 20} The state filed a memorandum in opposition to Young's motion for leave to file for a new trial, arguing that the photograph of K.K. was not "newly discovered" evidence as it was provided to defense counsel during discovery on May 12, 2017. Furthermore, the state argued that if the photograph had, in fact, been sent by K.K. to Young, then Young should have known about the photo before trial and instructed defense counsel to look for it. As the state argued, "despite [Young] being repeatedly asked to describe flirtatious texts during his interview with Hamilton Police, * * * he never once indicated that he had seen or been sent topless pictures by the victim – he stated that the victim would only ever show pictures of herself in underwear and bra." The state contended that Young's argument that his trial strategy would have been different as a result of this one photograph was "disingenuous."

{¶ 21} On February 27, 2018, the trial court issued a decision denying Young's motion for leave to file a motion for new trial. The court found that Young failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from filing his motion for new trial as his attorneys were given the photograph prior to trial and he failed to establish that he received ineffective representation by his trial attorneys.

{¶ 22} After denying Young's motion for leave to file for a new trial, the trial court sentenced Young to five years of community control. The court also classified Young as a Tier I sex offender.

{¶ 23} Young timely appealed his conviction and the denial of his motion for leave to file for a new trial, raising five assignments of error. For ease of discussion, we will address Young's assignments of error out of order.

{¶ 24} Assignment of Error No. 4:

{¶ 25} THE TRIAL COURT ERRED BY OVERRULING THE MOTION FOR LEAVE TO FILE FOR A NEW TRIAL.

{¶ 26} In his fourth assignment of error, Young argues the trial court erred when it denied his motion for leave to file for a new trial. Young contends he was unavoidably prevented from presenting K.K.'s topless snapchat photograph at trial because Young's trial counsel did not know about the photograph until after trial and the photograph was labeled "counsel only," thereby preventing Young from having access to it when it was exchanged during discovery in May 2017.

{¶ 27} Crim.R. 33 provides that a new trial may be granted on a defendant's motion for any of six causes materially affecting the defendant's substantial rights, including an "[i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial." Crim.R. 33(A)(1). Crim.R. 33(B) sets forth the timing requirements for motions for a new trial and provides as follows:

> Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by the jury has been waived, *unless it is made to appear by clear and convincing evidence proof that the defendant was unavoidably prevented from filing his motion for a new trial*, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided therein.
>
> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

(Emphasis added.) Crim.R. 33(B).

{¶ 28} Crim.R. 33(B), therefore, contemplates a two-step procedure. First, a defendant files "a motion for leave to file a delayed motion for new trial supported by evidence demonstrating that the [defendant] was unavoidably prevented from ascertaining the ground sought to be asserted by way of motion for new trial within the fourteen days after the rendering of the verdict." *State v. Walden*, 19 Ohio App.3d 141, 146 (10th Dist.1984). Then, if leave is granted upon a finding by the trial court that the defendant was unavoidably prevented from filing the motion within the 14-day time period, Crim.R. 33(B) provides that the defendant shall be given seven days to file his motion for new trial. *Id.*

{¶ 29} In the present case, Young filed his motion for leave to file a motion for new trial on December 13, 2017, 56 days after the trial court journalized its verdict. As Young's motion sets forth a claim of irregularity in the proceedings and was filed outside the 14-day period prescribed by Crim.R. 33(B), he was required to obtain leave of court to file his motion for new trial. *See State v. Farley*, 10th Dist. Franklin No. 03AP-555, 2004-Ohio-1781, ¶ 11.

{¶ 30} When seeking leave to file a motion for new trial, the moving party must establish by "clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial." *See State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 18, citing Crim.R. 33(B). A party is unavoidably prevented from filing a motion for new trial if "'the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the required time in the exercise of reasonable diligence.'" *Id.*, quoting *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶ 11. *See also State v. DeVaughns*, 2d Dist. Montgomery No. 27727, 2018-Ohio-1421, ¶ 19.

{¶ 31} "Clear and convincing proof 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *State v. Williams*, 12th Dist. Butler No. CA2003-01-001,

- 11 -

2003-Ohio-5873, ¶ 17, quoting *State v. Mathis*, 134 Ohio App.3d 77, 79 (1st Dist.1999). "To meet this burden, the measure or degree of proof [a defendant] must demonstrate is that 'which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *State v. Watson*, 12th Dist. Butler No. CA2016-08-159, 2017-Ohio-1403, ¶ 15, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 32} An appellate court reviews a trial court's denial of leave to file a delayed motion for new trial under an abuse of discretion standard. *State v. Barnes*, 12th Dist. Clermont No. CA99-06-057, 1999 Ohio App. LEXIS 6421, *3-4 (Dec. 30, 1999); *State v. Clyde*, 6th Dist. Erie No. E-18-016, 2019-Ohio-302, ¶ 14. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Thornton* at ¶ 21, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34. "A decision is unreasonable when it is 'unsupported by a sound reasoning process.'" *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 13, quoting *State v. Abdullah*, 10th Dist. Franklin No. 07AP-427, 2007-Ohio-7010, ¶ 16.

{¶ 33} In the present case, Young argued an irregularity in the proceeding, specifically his trial attorneys' ineffective representation in failing to discover and discuss with him the topless photo of K.K. that was provided by the state during discovery, denied him of a fair trial. "Ineffective assistance of trial counsel may be raised as a ground for a new trial under Crim.R. 33(A)(1) 'irregularity in the proceedings.'" *Farley*, 2004-Ohio-1781 at ¶ 11. *See also State v. Williams*, 11th Dist. Trumbull No. 2013-T-0096, 2014-Ohio-4883, ¶ 24. Young claimed he was unavoidably prevented from learning of his attorneys' ineffective representation within the 14-day timeframe set forth in Crim.R. 33(B) as his counsel did not learn of the existence of the Snapchat photograph until more than 14 days after trial. Young further contends that he could not have discovered the photograph himself, as the photograph was marked "counsel only" when it was turned over during discovery.

{¶ 34} In denying Young's motion for leave to file for a new trial, the trial court concluded Young failed to demonstrate he was unavoidably prevented from filing his motion for new trial within the time allotted by Crim.R. 33(B). The court stated, in relevant part, that

> as counsel for Defendant * * * admits that [they] already had this image prior to trial, but failed to use it, Defendant cannot be found to have been unavoidably prevented from filing his motion for a new trial. Nowhere within Defendant's Motion does he explain how he could have been unavoidably delayed from presenting evidence at trial which he already possessed.

The court then went a step further in its analysis and discussed the merits of Young's ineffective assistance of counsel claim. The court concluded that Young's trial attorneys did not provide deficient representation and, even if they had, Young could not demonstrate prejudice. The court stated that if Young had, in fact, been the recipient of K.K.'s topless Snapchat photograph, he "would have been aware of its existence, been able to discuss this with counsel, and would have alerted counsel to look for, or ask about, such a picture." Furthermore, the trial court found that there was not "any relation between the words on the [banner of the] photograph and the days earlier text exchange." In the court's opinion,

> the language of the victim in the text exchange indicated that she did not want to be pushed over and/or have her "butt grabbed." As such, for the Defense to point to a single topless Snapchat photograph, two days later, and with different language across it, and no proof that it was ever sent to anyone, much less the Defendant, as a continuation of that November 5th text conversation, defies reason and logic.

{¶ 35} Having thoroughly reviewed the record, we find that the trial court committed reversible error in denying Young's motion for leave to file a motion for new trial as the court's finding that Young "already possessed" the photograph prior to trial is unsupported by a sound reasoning process. Through his trial attorneys' affidavits, Young provided clear and convincing proof that he was unavoidably prevented from filing his motion for new trial within the 14-day time period prescribed by Crim.R. 33(B). Young's trial attorneys admitted they

had not discovered the Snapchat photograph when it was disclosed during discovery and, therefore, had not discussed the photograph with Young prior to trial. As the photograph was turned over as "counsel only" material, Young was prevented from viewing the photograph as part of discovery. Crim.R.16(C) specifically prohibits "counsel only" material from being shown to a defendant. Defense counsel is limited to "orally communicat[ing]" counsel only material to the defendant. Crim.R. 16(C). Here, Young's three trial attorneys all attested that because they had not discovered the photograph prior to trial, the photograph was not communicated or discussed when consulting with Young about defense theories or ways to impeach K.K.'s testimony.

{¶ 36} Young's attorneys learned of the photograph on December 7 or 8, 2017, which was more than 50 days after Young's guilty verdict was rendered. Young, therefore, could not have learned of his trial attorneys' ineffective representation – the alleged irregularity in proceedings – within the 14-day time period set forth in Crim.R. 33(B). As such, Young's motion for leave to file for a new trial should have been granted and Young provided with seven days to file his motion for a new trial.

{¶ 37} We further find that the trial court erred in the present case when it denied Young's motion for leave to file for a new trial as the court conflated two distinct issues. Rather than limiting its analysis to the issue of whether Young was unavoidably prevented from discovering his claim of irregularity in the proceedings due to counsels' alleged ineffective assistance, the trial court improperly analyzed the merits of Young's right to a new trial. *See, e.g., State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, ¶ 20 (2d Dist.) (finding that the "trial court conflate[d] two distinct issues" as the "court's finding goes to the merits of [defendant's] right to a new trial rather than the threshold issue of whether he was unavoidably prevented from discovering the evidence on which he relies"); *State v. Gaven*, 10th Dist. Franklin No. 16AP-645, 2017-Ohio-5524, ¶ 20 (reversing the denial of a motion for

leave to file for a new trial where the "trial court's analysis improperly 'conflate[d] two distinct issues' by resolving the motion for leave based on the merits of whether appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from discovering the new evidence").

{¶ 38} The court rejected Young's claim of an irregularity in the proceedings based on ineffective assistance of counsel without providing Young the opportunity to set forth any arguments and evidence demonstrating how his trial attorneys' alleged deficient performance in failing to recognize and use the Snapchat photograph prejudiced his right to a fair trial. Young's motion for leave is a brief, one-page motion asking for permission to file a motion for new trial. Because he was seeking leave to file his motion for new trial, Young's motion does not set forth his ineffective assistance of counsel arguments in any detail. For the trial court to deny the merits of Young's claim at this stage in the proceedings constitutes reversible error. *See Gaven* at ¶ 20. Young should be provided with the opportunity to demonstrate how knowledge of the photograph's existence and how use of the photograph at trial would have resulted in a different outcome.[4]

{¶ 39} Accordingly, we sustain Young's fourth assignment of error, reverse the trial court's decision denying Young's motion for leave to file a motion for new trial, remand the matter, and direct the trial court to issue an entry granting Young leave to file his motion for new trial. In accordance with Crim.R. 33(B), Young's motion for new trial shall be filed within seven days of the trial court's entry granting leave for the motion. Thereafter, the trial court

---

4. The state argues that if the Snapchat photograph had been sent by K.K. to Young, then Young would have known about the picture before trial and been able to instruct defense counsel to look for it or question K.K. about it at trial. The state contends Young cannot establish that his counsel was deficient where Young did not inform counsel of the photograph. This argument by the state goes to the merits of Young's motion for new trial; it is not relevant to a determination of whether leave should be granted to file the motion for new trial.

shall determine the merits of Young's motion for new trial and may, if it determines it is necessary, hold a hearing on the motion.

{¶ 40} Assignment of Error No. 5:

{¶ 41} THE TRIAL COURT ERRED BY CONVICTING YOUNG OF GSI.

{¶ 42} In his fifth assignment of error, Young argues that his conviction for gross sexual imposition is based on insufficient evidence. While our resolution of Young's fourth assignment of error mandates reversal, we are compelled to address his sufficiency challenge due to his constitutional protection against double jeopardy. *See State v. Lovejoy*, 79 Ohio St.3d 440, 449-450 (1997); *State v. Tillman*, 12th Dist. Butler No. CA2003-09-243, 2004-Ohio-6240, ¶ 36.

{¶ 43} The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." Therefore, the double-jeopardy clauses protect against a "second prosecution for the same offense after acquittal." *Girard v. Giordano*, Slip Opinion No. 2018-Ohio-5024, ¶ 8. This protection applies to "prevent retrial after an appellate court determines that the evidence presented at trial was insufficient to convict." *Id.* at ¶ 10. The double jeopardy clause prevents the state from having a "'second bite at the apple' and a chance to present evidence it failed to offer at the first trial." *Lovejoy* at 450.[5] As the possibility exists that a new trial may be granted upon our remand of appellant's fourth assignment of error, we find we must review the evidence offered at Young's trial to

---

5. In contrast to a reversal based on insufficient evidence, "when an appellate court's reversal is based on 'trial error' – for example, an erroneous admission of evidence – the Double Jeopardy Clause does not bar retrial." *Girard v. Giordano*, Slip Opinion No. 2018-Ohio-5024, ¶ 11, citing *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S.Ct. 285 (1988) and *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 18.

determine whether sufficient evidence was presented to support his conviction for gross sexual imposition. In doing so, we note that we consider "all the evidence admitted at trial, whether improperly admitted or not." *State v. B.C.M.*, 12th Dist. Warren Nos. CA2016-07-059 and CA2016-07-062, 2017-Ohio-1497, ¶ 33, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 25-26. *See also State v. Martucci*, 9th Dist. Summit No. 28888, 2018-Ohio-3471, ¶ 13.

{¶ 44} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 45} Young was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force." Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 46} Young argues the state failed to prove the sexual arousal or gratification element of gross sexual imposition. Young claims that the evidence presented by the state

demonstrates that any contact he may have made with K.K.'s vagina or breast was "incidental to [his] purpose of forcing her onto his lap for a few seconds." Further, Young contends the state improperly relied on "salacious texts" sent between Young and K.K. from November 4, 2016, which was weeks after the lap-pulling incident occurred, to establish the sexual arousal or gratification element. Young argues that use of these text messages constituted impermissible "inference stacking" as the trial court "assumed the texts were accurate to convey a sexual meaning – and inferred again that Young's sexual mindset was likewise present at the much earlier GSI event."

{¶ 47} "While an essential element of the offense of gross sexual imposition is that the act is for the 'purpose of sexual arousal or gratification,' there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69. "Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. In making this determination, the trier of fact is "permitted to infer what the defendant's motivation was in making the physical contact with the victim." *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 43. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 78.

{¶ 48} Contrary to Young's arguments, we find that his conviction for gross sexual imposition was supported by sufficient evidence as any rational trier of fact could have found the essential elements of gross sexual imposition proven beyond a reasonable doubt. The state presented testimony from K.K. that Young, when pulling K.K. into his lap, had his right

arm between her legs and he was moving his forearm to rub against her genitalia in both a back-and-forth and side-to-side motion. K.K. further testified that Young's hand was over her shoulder touching her breast and Young was biting at and trying to kiss the back of her neck. While doing these things, Young asked K.K., "When are you going to let me do this to you outside of work?" Given Young's placement of his arm and hand on K.K.'s erogenous zones and Young's statement at the time of the contact, a rational trier of fact could infer that the purpose of Young's sexual contact with the victim was for sexual arousal or gratification.

{¶ 49} Furthermore, with respect to the text messages Young exchanged with K.K., we find that consideration of the text messages did not result in impermissible inference stacking. Impermissible inferencing stacking occurs when a trier of fact "draw[s] an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts." *State v. Braden*, 12th Dist. Preble No. CA2013-12-012, 2014-Ohio-3385, ¶ 12. Here, the trier of fact could look at the text messages presented by the state to determine the nature of Young's and K.K.'s relationship and to infer Young's touching was for purposes of sexual arousal or gratification without stacking inferences on top of each other. In the text messages, Young called K.K. "baby," commented on her sexiness and physical attributes, and indicated his desire to push her over his desk and "[get] a really good feel." Using these messages, the trier of fact could infer that at the time Young rubbed K.K.'s vagina with his forearm and touched her breast with his hand, he was motivated by desires of sexual arousal or gratification.

{¶ 50} Accordingly, for the reasons stated above, we find that sufficient evidence was presented to support Young's conviction for gross sexual imposition. Young's fifth assignment of error is, therefore, overruled.

{¶ 51} Assignment of Error No. 1:

{¶ 52} THE TRIAL COURT ERRED BY EXCLUDING ADMISSIBLE EVIDENCE.

{¶ 53} Assignment of Error No. 2:

{¶ 54} THE TRIAL COURT ERRED BY ADMITTING INADMISSIBLE EVIDENCE.

{¶ 55} Assignment of Error No. 3:

{¶ 56} THE TRIAL COURT'S CUMULATIVE ERRORS DENIED YOUNG DUE PROCESS AND A FAIR TRIAL.

{¶ 57} Based on our resolution of Young's fourth assignment of error, we find his first, second, and third assignments of error are not yet ripe for review and we decline to address them. *See State v. Purk*, 9th Dist. Summit No. 28059, 2017-Ohio-7381, ¶ 16-17; *State v. Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634, ¶ 32.

{¶ 58} Judgment affirmed in part, reversed in part, and the matter remanded for further proceedings consistent with this opinion.

RINGLAND and M. POWELL, JJ., concur.