OPINION
{¶ 1} Appellant, Troy Lee Keith, was indicted in the Butler County Court of Common Pleas for the following offenses: nine counts of grand theft, a felony of the fourth degree; five counts of theft with the specification that the victim was an elderly or disabled person, a felony of the fourth degree; sixteen counts of theft, a felony of the fifth degree; and one count of petty theft, a misdemeanor of the first degree, all in violation of R.C. 2913.02(A)(3); sixteen counts of tampering with records, with a specification that the records were government *Page 2 
documents, a felony of the third degree, in violation of R.C.2913.42(A)(1) and (B)(4); and one count of engaging in a pattern of corrupt activity, a felony of the first degree, in violation in R.C.2923.32(A)(1).
 {¶ 2} Appellant operated a company whose clients were individuals whose real estate was the subject of a foreclosure proceeding by a mortgage company. Appellant's clients had fallen significantly behind in repaying loans on their real estate and were in danger of losing their property. Appellant identified potential clients by reviewing real estate listed for sale at sheriff's auction and sent the owner of the real estate a flier stating that he could help the individual keep the property. In imminent danger of losing their homes, appellant's clients were desperate. Appellant told these individuals that, if they would transfer their home to him and pay him a processing fee, he would stop the auction. He told them that he would lease the home to them for a year or more, during which time they would pay him rent payments. He told them that during this time their credit rating would be improving and thereafter, they could repurchase the real estate from him.
 {¶ 3} Appellant met with many of his clients only days before the sheriff's auction of their respective real estate was scheduled to occur. Frequently he signed documents and collected fees at the first meeting or within only days thereafter. The documents included a quitclaim deed transferring the real estate to his company and a lease from his company to the client, among many other documents. The amount of the processing fee charged was related to the value of the property and was generally between $1,000 and $2,000.
 {¶ 4} Most of the clients paid their processing fee and rent directly to appellant. Appellant used this money to pay office expenses and his salary. A small percentage of the revenue generated by the business was paid to a company in Columbus owned by appellant's cousin. During the course of appellant's transactions with his clients, some of the clients were contacted directly by and paid money to appellant's cousin in Columbus. *Page 3 
 {¶ 5} Bank records reflect that none of the money paid by the clients to appellant was used to recover any of the real estate from foreclosure. The real estate of each of the clients at issue in this case was sold at auction, usually within days after the documents were signed. The clients continued to live in their homes and pay rent to appellant, thinking appellant owned the real estate, while the sale at sheriff's auction was confirmed and eviction notices were served. Appellant repeatedly assured the clients that he was working with their mortgage companies to negotiate a deal. When the clients received eviction notices and questioned appellant, he assured them that their real estate was secure and they had nothing to worry about. He told them that he had reached an agreement with their mortgage companies and that the difficulty was caused by a lag in the legal process or some other mistake. He continued to reassure them even as they were set out by the sheriff.
 {¶ 6} Appellant testified at trial that he was only an employee of the company and that his cousin was in control of the company. He stated that he believed that his cousin was negotiating with mortgage companies on behalf of the clients. He stated that he started to become suspicious toward the end of January, but he was not sure that he was involved in a scam until a search warrant was served on his home in the beginning of March.
 {¶ 7} After a trial to a jury, appellant was found guilty of five counts of grand theft, three counts of theft with a specification that the victim was elderly, seventeen counts of theft, fourteen counts of tampering with records, with the specification that the records were government documents, and one count of engaging in a pattern of corrupt activity. Appellant was sentenced to 23 years and two months in prison. Appellant was ordered to pay restitution to his victims in the amount of $98,250.50. From this conviction appellant appeals raising four assignments of error:
 {¶ 8} "THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT MR. KEITH'S CONVICTIONS OF THEFT BY DECEPTION AND TAMPERING WITH *Page 4 
EVIDENCE."
 {¶ 9} In reviewing the sufficiency of the evidence, the reviewing court examines the evidence on record "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith, 80 Ohio St.3d89, 113, 1997-Ohio-355. The reviewing court should not substitute its evaluation of the credibility of witnesses for that of the trier of fact. State v. Benge, 75 Ohio St.3d 136, 142, 1996-Ohio-227.
 {¶ 10} The first two issues appellant argues under this assignment of error address culpability standards. He asserts that the state failed to prove that he knowingly deceived his clients. He also argues that the state had to prove that he had the purpose of depriving the victims of their money at the time that he obtained control over it, but failed to do so.
 {¶ 11} R.C. 2913.02(A) provides, in relevant part,
 {¶ 12} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 13} "* * *
 {¶ 14} "(3) By deception[.]"
 {¶ 15} Under R.C. 2913.01(A), deception means
 {¶ 16} "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 17} Under R.C. 2913.01 (C), deprive means to do any of the following:
 {¶ 18} "(1) Withhold property of another permanently, or for a period that appropriates *Page 5 
a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
 {¶ 19} "(2) Dispose of property so as to make it unlikely that the owner will recover it;
 {¶ 20} "(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration."
 {¶ 21} Thus, in order to prove theft by deception, the state needed to prove that appellant (1) knowingly obtained control over the property (2) by knowingly deceiving (3) with the purpose of depriving the owner of the property. Ohio courts of appeals, including this court, have interpreted this to require that the state prove that the defendant had the intent to permanently deprive the owner of the property at the time appellant obtained control over it. State v. Bakies (1991),71 Ohio App.3d 810, 814; State v. Smith, Butler App. No. CA2004-11-275, 2005-Ohio-6551,¶ 9.
 {¶ 22} The state presented evidence that, by obtaining quitclaim deeds, appellant was depriving homeowners of their right of redemption and their interest in any overpayment remaining after satisfaction of the mortgage. The record also reflects that appellant collected over $92,000 in processing fees and rent payments from his clients. Appellant contends that no evidence was presented at trial to support the inference that appellant knew that the clients' mortgages were not being assumed. However, the record is replete with evidence in opposition to this assertion.
 {¶ 23} The record reflects that, with respect to several clients, appellant was aware that a sheriff's sale of the real estate had already occurred, but appellant told the clients not to be concerned because he was the owner of the property and was negotiating with the mortgage companies. Appellant told one client to disregard letters that the client had received in October or November 2003 from the entity that purchased his property. On *Page 6 
October 24, 2003, another client was given a copy of the initial confirmation from the court of the sale of his real estate by the person who purchased his property at auction. The client immediately brought the letter to appellant's attention. Appellant met and signed documents with another client on the morning the sheriff's auction of her real estate was scheduled to occur. He collected a processing fee from this client after the home had already been sold at auction. An email that this client received on November 20, 2003, states that appellant did not get all of the information to the bank on time, indicating that he knew at least at that time that the sale had already occurred. Evictions began to occur with frequency at the beginning of December 2003, but appellant continued to enter into transactions and accept payment for rent and processing fees from his clients through early March 2004.
 {¶ 24} Appellant continued to enter into transaction after transaction after he became aware that his clients were being forced to leave their homes. This evidence alone is sufficient to allow the jury to draw the inference that appellant knew even when his first client signed documents that the mortgage was not going to be assumed by appellant's efforts or anyone else's. However, the evidence also shows that appellant sent to his cousin in Columbus as little as $12,500 of the more than $92,000 that he collected. Appellant did not inform several of his clients of the alleged relationship with his cousin, and he told several of his clients that he was himself working to secure the real estate. This evidence supports the reasonable inference that appellant was not working for his cousin. We find that the evidence presented at trial was sufficient such that, if believed, it would allow a jury to find beyond a reasonable doubt that appellant knowingly deceived his clients and that he had the purpose of permanently depriving them of their property at the time he gained control of it.
 {¶ 25} Appellant also argues that the state did not prove that he knowingly falsified conveyance fee statements. R.C. 2913.42(A) states, in relevant part,
 {¶ 26} "No person, knowing the person has no privilege to do so, and with purpose to *Page 7 
defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 27} "(1) Falsify * * * any * * * record[.]"
 {¶ 28} R.C. 2913.42(B)(4) provides that, "[i]f the * * * record is kept by or belongs to a local, state, or federal governmental entity," the crime is a felony of the third degree.
 {¶ 29} The state presented evidence that, with respect to each count of the indictment for tampering with government records, appellant submitted to the Butler County Auditor a conveyance fee form indicating that as consideration for the transfer of the real estate to the entity, the entity had assumed the mortgage. The state presented evidence that, when a mortgage is assumed, the transferee receives a credit as to the conveyance fee tax due to the county for the amount of the mortgage assumed. Accordingly, appellant was required to pay only one dollar in tax per thousand on the transfer rather than the three dollars per thousand in tax that would have been levied against the property had it been acquired by cash. The state presented evidence that the filing of the conveyance fee form causes the apparent owner of the property to change in the auditor's records and that the office of the auditor and recorder are county offices.
 {¶ 30} Appellant argues that he believed at the time that the documents were filed that his company was assuming the mortgages. Thus, he argues that he neither had the intent to defraud nor actually falsified any records. At trial, appellant argued that letters of assumption attached to the deeds when they were recorded show that the company was contractually bound to assume the mortgage. The letters are signed by the clients as well as by appellant. The letters purport to acknowledge the existence of an assumption of the mortgage, although no contractual assumption of the mortgage exists in the record. The letters are completely self-serving. However, bank records of the company indicate that none of the money appellant collected from his clients (or any other company money) was directed to any of his clients' mortgage holders. We find that this evidence is sufficient in that, if believed, it would *Page 8 
allow a jury to find beyond a reasonable doubt that appellant did not assume his clients' mortgages and that appellant intended to defraud the county at the time he submitted the falsified record.
 {¶ 31} Finally, appellant argues that the state failed to present any evidence to support count one and insufficient evidence to support count nine of the indictment. Under count one, appellant was found guilty of grand theft. Appellant argues that he should not have been found guilty with respect to this count because the record reflects that the victim in count one did not use his own money to pay the processing fee and rent to appellant. However, the record reflects that the victim borrowed money from family members in order to be able to pay appellant. That some of the payments were made directly to appellant by the family member on the victim's behalf is inconsequential.
 {¶ 32} Under count nine, appellant was found guilty of grand theft. Appellant argues that he should not have been found guilty of grand theft because appellant only obtained or exerted control over $4,210 of his client's money. An additional $1,100 was paid directly to appellant's cousin by the client. Appellant argues that the jury incorrectly determined that he was responsible for the theft of the $1,100 when it found him guilty of grand theft rather than the lesser included offense of theft. Under the theft statute, appellant was required to have "obtain[ed] or exert[ed] control over" at least $5,000 in order to be found guilty of grand theft. R.C. 2913.02(A). While appellant clearly exerted control over the $4,210, there is no evidence that he exerted control over the $1,100.00 absent prosecution for complicity. The state did not argue a theory of complicity with respect to this charge. As a result, appellant's argument on this matter is well-taken.
 {¶ 33} We note for the record that the judgment entry incorrectly reflects that appellant was found guilty of grand theft on count 29. The jury verdict forms reflect that appellant was found guilty only of theft. *Page 9 
 {¶ 34} For the foregoing reasons, with respect to counts nine and 29, appellant's conviction is reversed and remanded to the trial court to enter the proper judgment and verdict and for resentencing as theft offenses. With respect to the remaining issues raised under this assignment of error, appellant's conviction is affirmed.
 {¶ 35} "THE TRIAL COURT ERRED WHEN IT ORDERED MR. KEITH TO PAY A TOTAL OF OVER $92,000.00 IN RESTITUTION."
 {¶ 36} A restitution order must bear a reasonable relationship to the loss suffered. State v. Marbury (1995), 104 Ohio App.3d 179, 181, R.C.2929.18(A)(1). Restitution is limited to the actual loss caused by the criminal conduct for which the defendant was convicted. State v.Brumback (1996), 109 Ohio App.3d 65, 82; State v. Warner (1990),55 Ohio St.3d 31, 69. There must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty. Brumback at 83; Warner at 69.
 {¶ 37} Appellant argues that he should not be required to pay restitution at all because he did not possess the requisite mental state to find him guilty of theft. Appellant also argues that he should not have been ordered to pay restitution for amounts that were paid by his clients to his cousin because his liability for economic loss must be limited to the offenses that he personally perpetrated. As stated above, perpetration of a theft offense requires that the defendant "obtain or exert control" over the property. R.C. 2913.02(A). The state did not prove that appellant obtained or exerted control over the money paid directly by appellant's clients to appellant's cousin. As such, the restitution orders with respect to counts nine, eleven, and twelve, were in error. Accordingly, the restitution orders with respect to those counts are reversed and remanded to the trial court for a reduction of the total restitution. Appellant also argues that he should not be responsible for restitution with respect to counts ten and 29. With respect to count ten, appellant was given money by his client, which he *Page 10 
directed to his cousin in Columbus. As such, appellant obtained control over the money. We find that this constitutes competent and credible evidence to support the restitution award. Similarly, appellant argues that he should not be responsible for paying part of the restitution order under count 29 because his client sent funds directly to appellant's cousin in Columbus. However, the record reflects that the client did so under direct instructions from appellant, which demonstrates that appellant exerted control over the money. As such, we find that there is competent and credible evidence to support the restitution award. With respect to the remaining restitution orders, we determined under the first assignment of error that there was sufficient evidence to support appellant's conviction for theft. Accordingly, the restitution orders with respect to the remaining theft offenses are supported by competent and credible evidence and are affirmed.
 {¶ 38} "THE TRIAL COURT ERRED WHEN IT IMPOSED NONMINIMUM AND CONSECUTIVE SENTENCES BASED ON FACTORS WHICH WERE NOT FOUND BY A JURY OR ADMITTED BY MR. KEITH."
 {¶ 39} The state concedes that, because Mr. Keith was sentenced prior to and under provisions of Ohio's sentencing statutes determined to be unconstitutional by the Ohio Supreme Court in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, appellant's sentence must be reversed and this case must be remanded for resentencing.
 {¶ 40} "THE TRIAL COURT ERRED IN ENTERING CONVICTIONS OF THIRD-DEGREE FELONIES IN COUNTS THIRTY THROUGH THIRTY-NINE, COUNTS FORTY-ONE THROUGH FORTY-THREE, AND COUNT FORTY-FIVE."
 {¶ 41} Appellant argues that the verdicts of guilt with respect to all of the counts related to tampering with government documents do not support his conviction for third-degree felonies because the verdict forms did not state either the degree of the offense or that additional elements were present. Rather, the verdict forms simply recited that the *Page 11 
offense was as charged in the indictment. Under each of these offenses, the indictment indicated that appellant was charged with tampering with records with the specification that the records were kept by a government entity.
 {¶ 42} R.C. 2945.75 provides, in pertinent part:
 {¶ 43} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:
 {¶ 44} * * *
 {¶ 45} "(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 46} With respect to this statutory provision, this court has previously adopted a substantial compliance test providing that, if the verdict form referred to the indictment, the language constituted compliance with the statute. State v. Woods (1982), 8 Ohio App.3d 56;Cockrell v. Russell (Nov. 18, 1996), Warren App. No. CA96-07-071,1996 WL 666732, at *1. However, in State v. Pelfrey, 112 Ohio St.3d 422,2007-Ohio-256, ¶ 12-14, the Ohio Supreme Court recently declined to adopt such a view. The Ohio Supreme Court specifically stated that "[t]he express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." Id. at ¶ 14.
 {¶ 47} In accordance with Pelfrey, we find that the verdict forms in the counts alleging tampering with documents do not support an entry of conviction for tampering with records with the specification that the records are kept by a government entity. According to R.C. 2945.75(A)(2) and Pelfrey, appellant may only be convicted of the least degree of the offense *Page 12 
charged.
 {¶ 48} Appellant's argument with respect to his fourth assignment of error is well-taken. Appellant's conviction with respect to counts 30 through 39, counts 41 through 43, and count 45 is reversed and remanded to the trial court to enter the proper judgment on the verdict and for resentencing.
 {¶ 49} In summary, the convictions on counts one through eight, ten through 16, 18, 20 through 26, 28, and 46 are affirmed. The convictions on counts nine, 29, 30 through 39, 41 through 43, and 45 are reversed and remanded to the trial court for reduction to a lesser included offense and resentencing. The restitution awards with respect to counts one through eight, ten, 13 through 16, 18, 20 through 26, 28, and 29 are affirmed. The restitution awards on counts nine, eleven, and twelve are reversed and remanded for reduction in accordance with the proper convictions. With respect to all counts before this court, the cause is remanded for resentencing under Foster.
 {¶ 50} Judgment affirmed in part, reversed in part, and remanded.
YOUNG, P.J., concurs.
WALSH, J., concurs in part and dissents in part.