[Cite as *State v. Helton*, 2019-Ohio-4399.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-12-141 |
| | : | O P I N I O N |
| - vs - | | 10/28/2019 |
| | : | |
| ORLAND O. HELTON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33550

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Engel & Martin, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Orland Helton, appeals his conviction in the Warren County Court of Common Pleas for two counts of gross sexual imposition. For the reasons outlined below, we affirm the jury's finding of guilty but reverse and vacate the no-contact order imposed by the trial court.

{¶ 2} On October 16, 2017, the Warren County Grand Jury returned an indictment

charging Helton with three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), all third-degree felonies. According to the bill of particulars, the charges arose after it was alleged Helton had sexual contact with his two nieces, T.H. and L.H., between June 1, 2016 and May 1, 2017 while T.H. and L.H. were at his Warren County apartment. There is no dispute that T.H. and L.H. were both under the age of 13 at the time the alleged sexual contact occurred; T.H. being nine and ten years old while L.H. was eight and nine years old. There is also no dispute that one of the three charges related to Helton's alleged sexual contact with L.H., whereas the other two charges dealt with Helton's alleged sexual contact with T.H.

{¶ 3} On October 15 and 16, 2018, the trial court held a two-day jury trial. During trial, the jury heard testimony from both T.H. and L.H., among others. As part of this testimony, T.H. testified that she and L.H. would occasionally visit Helton at his apartment. While there, T.H. testified that Helton would oftentimes ask her and L.H. to come sit on his lap while he was sitting in his living room recliner. T.H. testified that she generally complied with Helton's requests. When asked why she would do as Helton asked, T.H. testified that it was because Helton "scared" her and that Helton was "just a scary person" who had firearms, knives, a taser, and other weapons sitting out in plain sight all around his apartment.

{¶ 4} Continuing, T.H. testified that while she was sitting on Helton's lap that Helton would put a blanket over top of them. T.H. testified that Helton would then put his hands under her shirt and touch and "kind of rub on" her "belly" and "boobs." T.H. testified that this would happen "like all the time." Although scared of Helton, T.H. testified that she did not tell Helton to stop touching her because she did not want him to be "triggered" and hurt her. T.H. also testified that whenever Helton asked her to come sit on his lap that she "knew he wanted to touch [her]."

{¶ 5} T.H. further testified that Helton would sometimes call both her and her younger sister, L.H., to come sit on his lap at the same time. When this occurred, T.H. testified that Helton "would have one of us on the other knee and one of us on one knee." T.H. testified that Helton would then put "a blanket over us so no one would see it." T.H. testified that Helton then used "one hand for each kid." This, as T.H. testified, would oftentimes result in her "[j]ust sitting in his lap" while Helton touched her "boobs."

{¶ 6} T.H. additionally testified that Helton had once pulled down her pants and touched and rubbed her buttocks. During this time, T.H. testified that Helton told her that "it was okay." T.H. testified that Helton would later tell both her and L.H. not to "tell anyone about all the fun we had.," T.H. testified that she took this to mean Helton touching her and her younger sister, L.H.

{¶ 7} Similar to T.H.'s testimony, L.H. testified that Helton touched her "chest," "bad spot," and buttocks while she sat on Helton's lap while he was sitting in his living room recliner. During this time, L.H. testified Helton would cover her with a blanket and then "reach into [her] clothes" with both hands and rub her "bad spot, chest and butt" while her pants and underwear were "slightly" off. L.H. testified this happened "almost every time" that she and T.H. would go to Helton's apartment. This includes several times where L.H. testified she was "on one side of his lap and [T.H.] on the other side." When asked if Helton ever said anything to her when he was touching her chest, "bad spot," and buttocks, L.H. testified that Helton told her "what happens here stays here." L.H. testified that she took this to mean "[d]on't tell anything that's – that goes on here."

{¶ 8} In his defense, Helton called five witnesses; his stepfather, his brother, one of his self-identified "real good friends," a pediatric nurse practitioner who conducted a physical examination of T.H. and L.H. looking for signs of sexual abuse, as well as a social worker who served as T.H.'s and L.H.'s therapist. Helton's step-father, brother, and friend

all testified that they did not believe Helton had touched either T.H. or L.H. as the two girls had alleged. These three witnesses, however, also testified that T.H. and L.H. would visit Helton at his apartment when they were not there. This made it impossible for three these witnesses to refute T.H.'s and L.H.'s claims that Helton had touched them inappropriately. The other two witnesses, the pediatric nurse and social worker, were also unable to refute T.H.'s and L.H.'s claims. This includes testimony from the pediatric nurse practitioner who testified that the absence of any visible injury to T.H.'s or L.H.'s bodies did not necessarily mean that Helton had not sexually abused either child.

{¶ 9} After both parties rested, the jury returned a verdict finding Helton guilty on two of the three charged offenses; one charge for each of the two victims, T.H. and L.H. Upon receiving the jury's verdict, the trial court held a sentencing hearing and sentenced Helton to serve a total of five years in prison. The trial court also designated Helton a Tier II sex offender, notified Helton that he would be subject to a mandatory term of five years postrelease control following his release from prison, and issued a no-contact order that required Helton to have no contact with any minor children. This includes T.H. and L.H., as well as Helton's own two children.

{¶ 10} Helton now appeals his conviction, raising three assignments of error for review. For ease of discussion, we will review Helton's first and second assignments of error together.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE CONVICTIONS IN THIS MATTER WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE CONVICTIONS IN THIS MATTER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} In his first and second assignments of error, Helton argues his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶ 16} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 17} "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 140. This is because, rather than determine whether the state has met its burden of production at trial, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the

evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 18} As noted above, Helton was convicted of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). Pursuant to that statute, no person shall have "sexual contact" with another when the other person "is less than thirteen years of age, whether or not the offender knowns the age of that person." As defined by R.C. 2907.01(B), the phrase "sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." "The Ohio Revised Code does not define 'sexual arousal' or 'sexual gratification.'" *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 23, citing *In re Anderson*, 116 Ohio App.3d 441, 443 (12th Dist.1996). The statute nevertheless "contemplates any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." *State v. Anderson*, 12th Dist. Clermont No. CA93-03-019, 1993 Ohio App. LEXIS 5036, *7 (Oct. 18, 1993).

{¶ 19} Helton initially argues that his conviction must be reversed because there was no evidence to indicate his touching T.H. and L.H. was for the purpose of sexual arousal or sexual gratification, nor any evidence that he was actually sexually aroused or sexually gratified by touching T.H. and L.H. However, "[w]hile an essential element of the offense

- 6 -

of gross sexual imposition is that the act is for the 'purpose of sexual arousal or gratification,' there is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69. "'Whether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact.'" *State v. Young*, 12th Dist. Butler No. CA2018-03-047, 2019-Ohio-912, ¶ 47, quoting *Gesell*, 2006-Ohio-3621 at ¶ 25. In making this determination, the trier of fact is "permitted to infer what the defendant's motivation was in making the physical contact with the victim." *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 43. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 78.

{¶ 20} The record in this case contains sufficient testimony and evidence for the jury to reasonably conclude that Helton's acts of touching T.H. and L.H. on their respective erogenous zones was for the purpose of sexual arousal or gratification. T.H. testified Helton touched and rubbed her "belly," "boobs," and buttocks. L.H. similarly testified that Helton touched her "chest, bad spot, and butt." The record indicates Helton then told T.H. that "it was okay" and instructed T.H. not to "tell anyone about all the fun we had." T.H. testified that she thought this meant she should not tell anyone about Helton touching her "belly," "boobs," and buttocks.

{¶ 21} The record indicates Helton also told L.H. "what happens here stays here," which L.H. took to mean "[d]on't tell anything that's – that goes on here." This evidence supports an inference that Helton's actions were for the purpose of sexually arousing or gratifying himself. *See, e.g., State v. Williams*, 12th Dist. Warren No. CA2012-08-080,

2013-Ohio-3410, ¶ 34 (testimony and evidence indicating appellant rubbed minor victims' genitals only when other adults were absent from the home and instructed them not to tell anyone supported an inference that appellant's actions were for the purpose of sexual arousal or gratification). Therefore, because there was sufficient testimony and evidence for the jury to reasonably conclude that Helton's acts of touching T.H. and L.H. on their respective erogenous zones was for the purpose of sexual arousal or gratification, Helton's argument to the contrary lacks merit.

{¶ 22} Helton also argues that his conviction must be reversed since he was convicted on just two of the three charged offenses, thereby indicating the jury found at least a portion of T.H.'s and L.H.'s testimony lacked credibility. However, while it is true that Helton was acquitted on one of the three offenses, that does not mean the jury should have necessarily acquitted him on all three. The jury was free to believe or disbelieve all, part, or none of the testimony elicited from the state's witnesses in support of each offense. *State v. Coleman*, 12th Dist. Butler No. CA2010-12-329, 2011-Ohio-4564, ¶ 26. The jury in this case choose to believe the testimony and evidence elicited for two of the three charged offenses while disbelieving the testimony and evidence elicited for the third. This was well within the jury's purview as the trier of fact and ultimate fact finder. Therefore, because Helton's conviction was supported by sufficient evidence and not against the manifest weight of the evidence, Helton's first and second assignments of error are overruled.

{¶ 23} Assignment of Error No. 3:

{¶ 24} THE TRIAL COURT ERRED BY IMPOSING BOTH A PRISON TERM AND COMMUNITY CONTROL SANCTIONS FOR A SINGLE OFFENSE.

{¶ 25} In his third assignment of error, Helton argues the trial court erred by sentencing him to prison and a community control sanction for the same felony offense; specifically, by sentencing him to five years in prison while at the same time imposing a no-

contact order. *See State v. Miller*, 12th Dist. Butler No. CA2010-12-336, 2011-Ohio-3909, ¶ 21 ("a no contact order is a form of community control"). The Ohio Supreme Court has addressed this issue and held "[a] trial court cannot impose a prison term and a no-contact order for the same felony offense." *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, ¶ 1; *State v. Paige*, 153 Ohio St.3d 214, 2018-Ohio-813, ¶ 6 ("a court must impose either a prison term or a community-control sanction as a sentence for a particular felony offense – a court cannot impose both for a single offense"). Therefore, because a trial court cannot impose a prison term and a no-contact order for the same felony offense, Helton's third assignment of error is sustained and the trial court's decision to impose a no-contact order is reversed and vacated.

**{¶ 26}** Judgment affirmed as to the jury's finding of guilty but reversed and vacated as to the no-contact order.

RINGLAND, P.J., and PIPER, J., concur.