[Cite as *State v. Faircloth*, 2025-Ohio-878.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-02-028 |
| - vs - | : | O P I N I O N<br>3/17/2025 |
| | : | |
| TIEASURE T. FAIRCLOTH, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CRB 2301213


Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher Pagan, for appellant.


**PIPER, J.**

{¶ 1}   Appellant, Tieasure T. Faircloth, appeals her conviction in the Butler County Area III Court for one count of first-degree misdemeanor theft in violation of R.C. 2913.02(A)(3).  For the reasons outlined below, we affirm the trial court's guilt finding but reverse and remand for the limited purpose of resentencing to afford Faircloth her right to allocution as provided by Crim.R. 32(A)(1).

**Facts and Procedural History**

{¶ 2} On October 6, 2023, a complaint was filed charging Faircloth with the above-named first-degree misdemeanor offense after it was alleged she had engaged in a deceptive scheme to get a Wal-Mart store to give her money in exchange for an area rug that she had not paid for.

{¶ 3} On January 9, 2024, the matter proceeded to a one-day bench trial. During trial, the trial court heard testimony from a total of three witnesses. These three witnesses were West Chester Police Officer Ryan Akins, Alex Renner, one of the Wal-Mart store's asset protection investigators, and Faircloth.

{¶ 4} Upon hearing each of these three witnesses' testimonies, the trial court issued its verdict finding Faircloth guilty as charged. The trial court then immediately proceeded to sentencing where it sentenced Faircloth to a 180-day suspended jail sentence conditioned on her receiving no further theft convictions for one year. The trial court also ordered Faircloth to pay a $200 fine plus court costs.

{¶ 5} On February 6, 2024, Faircloth filed a notice of appeal. Following briefing, on December 11, 2024, the matter was submitted to this court for consideration. Faircloth's appeal now properly before this court for decision, Faircloth has raised two assignments of error for review.

**Assignment of Error No. 1:**

{¶ 6} THE TRIAL COURT ERRED BY CONVICTING FAIRCLOTH OF PETTY THEFT UNDER R.C. 2913.02(A)(3).

{¶ 7} In her first assignment of error, Faircloth argues the trial court erred by finding her guilty of first-degree misdemeanor theft in violation of R.C. 2913.02(A)(3). She suggests the complaint merely charged her with a second-degree misdemeanor

- 2 -

*attempted* theft. This, according to Faircloth, resulted in a violation of Crim.R. 7(D), a question that this court reviews de novo. *See State v. McGlothin*, 2015-Ohio-2992, ¶ 19. The complaint, however, did not charge Faircloth with a violation of this state's attempt statute, R.C. 2923.02(A). Up-ending Faircloth's suggestion is the fact that the complaint clearly states that Faircloth was being charged with a first-degree misdemeanor theft in violation of R.C. 2913.02(A)(3).

**{¶ 8}** Pursuant to R.C. 2913.02(A)(3), "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]y deception." Therefore, contrary to Faircloth's claim, the trial court's decision finding Faircloth guilty of a theft in violation of R.C. 2913.02(A)(3) was not error, plain or otherwise, as it was not violative of Crim.R. 7(D).[1] To the extent Faircloth claims otherwise, such argument lacks merit.

**{¶ 9}** Also lacking merit is Faircloth's claim that the trial court's verdict was not supported by sufficient evidence. We review de novo a challenge to the sufficiency of the evidence. *State v. Samamra*, 2025-Ohio-126, ¶ 6 (9th Dist.). A claim challenging the sufficiency of the evidence "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). When making such a determination, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A reversal based on insufficient evidence leads

---

1. Crim.R. 7(D) provides, in pertinent part, that "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

to an acquittal that bars a retrial." *State v. Powers*, 2024-Ohio-1521, ¶ 25 (12th Dist.).

{¶ 10} The record in this case, when viewed in a light most favorable to the prosecution, contains ample evidence to support the trial court's findings as to each essential element of the offense. This includes the element of deception. As noted above, theft by deception requires obtaining control over property with the purpose of depriving the owner of the property through the means of trickery. *State v. Wilson*, 2007-Ohio-5187, ¶ 9 (12th Dist.). Thus, for the state to prove theft by deception in violation of R.C. 2913.02(A)(3), the state was required to show "that the defendant had the intent to permanently deprive the owner of the property at the time appellant obtained control over it." *State v. Keith*, 2008-Ohio-348, ¶ 21 (12th Dist.). When viewing the evidence in a light most favorable to the prosecution, that is exactly what Faircloth did in this case by executing a deceptive scheme to obtain money from Wal-Mart in exchange for an item that she had never purchased nor paid for.[2]

{¶ 11} The fact that Faircloth was interrupted in the midst of her possession and deception is also immaterial. This is because, as it is now well established, "property need not be removed from the premises of the owner in order to constitute theft." *Cleveland v. Flynn*, 2018-Ohio-3585, ¶ 19-24 (8th Dist.). To hold otherwise places an unnecessary burden on Wal-Mart's customer service associates—essentially elevating entry level employees to store detectives—by requiring them to sniff out unlawfully deceptive schemes like the one executed by Faircloth in this case. Despite the implication from the dissent's reasoning, store employees must not be required to let merchandise be possessed  outside the store before confronting someone in the middle a theft

---

2. It is undeniable Faircloth's explanations during the investigation and at trial morphed in substance several times in an effort to create confusion and avoid culpability.

offense.[3]

{¶ 12} In a strained analysis of statutory text, the dissent suggests that Faircloth's possession of the rug at the customer service desk with a deceptive purpose was not an "act."[4]  The dissent finds evidentiary that after Faircloth purchased merchandise—other merchandise except for the area rug at issue—and exited the points of sale, Faircloth had the *consent* of Wal-Mart to take the unpaid rug to customer service for purposes of her deceptive scheme, and that other customers do the same.  However, there was no factual basis for the dissent to impose an inference Faircloth had "consent" to possess the rug by her deception.

{¶ 13} The dissent suggests a statutory interpretation that permits a conclusion that retention of the rug for presentation to the customer service desk by way of a false narrative of deception was not an "act" sufficient to comprise theft by deception.  Yet, the dissent acknowledges in its first footnote that Faircloth's "actions" at the customer service desk were sufficient to establish deception.  In other words, Faircloth's false presentation of the area rug to customer service was an act she undertook to for her deceptive purpose.

{¶ 14} Alternatively, the dissent suggests elsewhere in its reasoning that Faircloth's conviction is based upon insufficient evidence because her *deception* was

---

3. Our dissenting colleague constructions an argument under a misapprehension.  In other words, Faircloth never argued for an application of the dissent's statutory construction of the theft by deception statute, R.C. 2913.02(A)(3), nor did Faircloth suggest that there was no "act."  Although it generally goes without saying, it is well established that it is not this court's duty to "root out" arguments that can support an assignment of error, nor will this court "conjure up questions never squarely asked . . . ." *State v. Fields*, 2009-Ohio-6921, ¶ 7 (12th Dist.); App. R. 16(A)(7).  Faircloth did not make the argument suggested by the dissent.  This court will not construct such on Faircloth's behalf.  *See State v. Armbruster*, 2024-Ohio-2763, ¶ 45 (12th Dist.).  Thus, we decline to join the dissent's creation and analysis of an issue not raised.

4. While not the dissent's intention, it reassigns the *weight* given to Faircloth's actions to determine under a *sufficiency* analysis that there was no "act" to support her conviction.  The dissent then applies the weight of the evidence and orders the trial court to substitute its original conviction to a judgment the dissent approves of.  We find this ill-advised.

unsuccessful. With the record thoroughly reviewed and for reasons stated previously, we respectfully find neither suggestion appropriate.

{¶ 15} The dissent adopts Faircloth's conclusion that the state did not produce sufficient evidence to support her conviction which requires it to be vacated. Then the dissent orders a remand for the trial court to enter a conviction for a different offense. A determination that the state's evidence was insufficient as a matter of law has the same effect as a not guilty finding because it means no rational factfinder would have convicted the defendant. *State v. Thompkins,* 1997-Ohio-52, ¶ 2,3 citing *Tibbs v. Florida*, 457 U.S. 31, 45-47 (1982).

{¶ 16} Furthermore, it would be erroneous for *an appellate court* to subsequently order a conviction to a different degree misdemeanor with a different penalty based upon its interpretation of the evidence. The dissent's interpretation of the evidence is misapplied in a sufficiency analysis because it is not the only interpretation – and not an interpretation favorable to the state, which is required when reviewing a challenge to the sufficiency of the evidence. Accordingly, finding no merit to any of the arguments raised by Faircloth herein, and unpersuaded by the dissent's overly narrow interpretation of the law as applied to Faircloth's conduct, Faircloth's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 17} THE TRIAL COURT ERRED BY IMPOSING A SENTENCE THAT WAS CONTRARY TO LAW.

{¶ 18} In her second assignment of error, Faircloth argues the trial court's decision sentencing her to a 180-day suspended jail sentence was contrary to law. But, contrary to Faircloth's claim, the trial court's decision sentencing her to a suspended 180-day jail term was not contrary to law as that sentence falls within the statutory range available for

first-degree misdemeanor offenses like theft in violation of R.C. 2913.02(A)(3). *See* R.C. 2929.24(A)(1) ("[f]or a misdemeanor of the first degree, not more than one hundred eighty days"). It was error, however, for the trial court not to afford Faircloth her right to allocution prior to issuing its sentencing decision as required by Crim.R. 32(A)(1). *See, e.g., State v. Faircloth*, 2021-Ohio-1514, ¶ 7-13 (2d Dist.) (reversing and remanding for resentencing where the trial court failed to afford appellant an opportunity to address the court before it imposed its sentencing decision as required by Crim.R. 32[A][1]). Therefore, to the extent stated herein, Faircloth's second assignment of error is sustained. Accordingly, finding merit to Faircloth's second assignment of error, the trial court's sentence must be reversed and this matter remanded for the limited purpose of resentencing to afford Faircloth her right to allocution as provided by Crim.R. 32(A)(1).

{¶ 19} Judgment affirmed in part, reversed in part, and remanded for resentencing.


HENDRICKSON, J., concurs.

BYRNE, P.J., dissents.


**BYRNE, P.J., dissenting.**

{¶ 20} I respectfully dissent. Based on the discussion below, I would find that the state submitted sufficient evidence to prove that Faircloth committed *attempted* theft by deception, but insufficient evidence to prove theft by deception.

{¶ 21} There was testimony at trial that Faircloth entered a Walmart store with only personal items and a shopping cart. She then obtained a $95 area rug from a shelf and took the rug to the store's customer service desk, passing the store's point-of-sale terminals.

{¶ 22} According to Faircloth, upon approaching the Walmart store's customer service desk she asked to be able to take the rug home as a "replacement" for a rug she

had previously purchased from the same store and which she had discovered was damaged when she took it home. She testified that after discovering the first rug's damage she had called Walmart's corporate customer service department, where someone told her she could keep the damaged rug and come into the store to receive a second, "replacement" rug, and that this arrangement would be noted in Walmart's computer system.

{¶ 23} The state did not call any Walmart customer service employees to testify as to their recollection of what Faircloth said when she presented the rug to the customer service desk. Instead, the state called West Chester Township Police Officer Ryan Akins as a witness. Officer Akins, who responded to a call of a theft in progress at Walmart, initially testified that Faircloth told him that Walmart's corporate customer service department told her she could "keep the damaged merchandise, as well as get a return for it." However, he later clarified that Faircloth told him that "[s]he was just advised by an unknown party via telephone that she could come up to customer service with the merchandise, as well as get a—to keep the damaged product, as well as get an additional item because the item was damaged." Officer Akins further clarified, "I did ask her if [the rug] was store property that was in her cart and she stated yes."

{¶ 24} The state also called Walmart asset protection investigator Alex Renner. Renner testified regarding Walmart's investigation, including his review of surveillance video. But Renner did not testify to what Faircloth told him about what she said to the customer service desk.

{¶ 25} The state's witnesses pointed out multiple problems with Faircloth's story. First, Faircloth had no receipt for the purchase of the purported damaged rug. Second, a search of credit or debit card records tied to Faircloth did not show that she purchased the damaged rug. Third, contrary to Faircloth's assertion, there was no notation in

Walmart's computer system that she had permission from corporate customer service to either take the second, "replacement" rug or receive a refund for the first, "damaged" rug.

{¶ 26} The theft statute at issue in this case states in relevant part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> . . .
>
> (3) By deception. . .

R.C. 2913.02(A)(3).

{¶ 27} In the theft statute, the phrase "with purpose to deprive the owner of property or services" modifies "person," and indicates the mens rea with which a "person" must act to violate the statute. R.C. 2913.02(A). A person "acts purposely when it is the person's specific intention to cause a certain result . . . ." R.C. 2901.22(A). However, the word "knowingly" in the theft statute's phrase "No person…shall knowingly obtain or exert control…" provides a second mens rea. A person "acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Because "knowingly" is defined to apply "regardless of purpose," it is a bit jarring that the different mens rea terms "knowingly" and "with purpose" are used together in the statute.

{¶ 28} Regardless, in the case before us, viewing the evidence in the light most favorable to the state—as we are required to do in a sufficiency analysis, *State v. Helton*, 2019-Ohio-4399, ¶ 16 (12th Dist.)—there was sufficient evidence at trial to establish that Faircloth acted with the required mens rea. Specifically, there was evidence at trial establishing that Faircloth acted both "with purpose to deprive" Walmart of the rug (or its cash value) and acted "knowingly" when she approached the customer service desk with a false story about having permission from Walmart's corporate customer service

department to obtain a replacement rug (or a refund). But this analysis only establishes that Faircloth acted with the mens rea necessary to violate the statute; it does not address whether she performed the *acts* required to violate the statute.

{¶ 29} Returning to the statute, the phrase "[b]y deception" modifies the phrase "knowingly obtain or exert control over either the property or services." R.C. 2913.02(A)(3). This means that to violate the (A)(3) subsection of the statute a person must "obtain or exert control" over the property *by* an act of deception. The act of deception must be the means by which the act of obtaining or exerting control is performed. *Id.*

{¶ 30} If Faircloth's act of deception—her story about corporate customer service giving her permission to take a second rug or obtain a refund—had been successful and had resulted in her obtaining or exerting control over the rug, there would be sufficient evidence to convict Faircloth of theft by deception under R.C. 2913.02(A)(3).[5] However, that is not the evidence with which the trial court was presented, as Faircloth's deception was unsuccessful and did not result in her obtaining or exerting control over the rug.

{¶ 31} Instead, Faircloth obtained or exerted control over the rug by a different method: she simply picked up the rug, placed it in her shopping cart, and took the shopping cart and rug to the customer service desk, past the point-of-sale terminals. The evidence in the record indicates she performed these acts openly and without any deception, with the rug in her shopping cart in plain view of anyone in the store. The act of doing so was not unlawful, as Walmart, like other retail stores, permits customers to

---

5. The statutory definition of "deception" is "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A). Based on the state's evidence, Faircloth's actions at the customer service desk are sufficient to establish deception.

place items in their cart and transport them around the store, including to customer service.[6] There is nothing in the record indicating that Walmart does not permit customers to take unpurchased items past the point-of-sale terminals and to the customer service desk. This is presumably why the state did not charge Faircloth with theft under R.C. 2913.02(A)(1) (which makes it a crime to obtain or exert control over property "[w]ithout the consent of the owner or person authorized to give consent") or R.C. 2913.02(A)(2) (which makes it a crime to obtain or exert control over property "[b]eyond the scope of the express or implied consent of the owner or person authorized to give consent"). From when she picked up the rug and at least until Faircloth told her false story at the customer service desk, she obtained or exerted control over the rug within the scope of Walmart's consent.[7]

{¶ 32} In my view, the offense of theft by deception under R.C. 2913.02(A)(3) could not be completed unless Faircloth used deception to obtain or exert control over the rug, but the testimony and other evidence in the record lends no support for the conclusion that this is what occurred here. Faircloth initially obtained or exerted control over the rug *without* the use of deception when she placed the rug in her cart; only later did she arrive at the customer service desk and attempt to convince customer service to either give her a refund or permission to remove the rug from the store as a "replacement" for the "damaged" rug she claimed to have previously purchased. Faircloth's deception did not

---

6. One district court of appeals has described a customer's possession of a sales item in a store as "conditional temporary possession." *State v. Shanks*, 1981 Ohio App. LEXIS 10127, *5 (4th Dist. Sep. 24, 1981).

7. The facts of this case are unlike those in one of the cases cited by the majority, *Cleveland v. Flynn*, 2018-Ohio-3585 (8th Dist.). In that case, the Eighth District held that the appellant committed theft by deception when she hid video games under her coat, walked around the store, and attempted to leave the store with the video games still hidden under her coat. *Id.* at ¶ 20-24. In *Flynn* the deceptive act of hiding the video games under her coat was the means by which the appellant obtained or exerted control over the video games. *Id.* Not so here, where Faircloth's deceptive act only occurred *after* she obtained or exerted control over the rug, and was not the means by which she obtained or exerted control.

contribute in any way to her obtaining control over the rug.[8]  As a result, the evidence presented was insufficient to prove that Faircloth committed theft by deception under R.C. 2913.02(A)(3).

{¶ 33} The evidence was sufficient, however, to prove that Faircloth *attempted* to commit theft by deception under R.C. 2913.02(A)(3).   The trial court should have convicted Faircloth of attempted theft by deception.   R.C. 2923.02(A) ("No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.").   Attempt crimes need not be included within the charging document for the complete offense.  *See State v. Deem*, 40 Ohio St.3d 205, 208 (1988) ("Attempts, as criminal offenses, arise from R.C. 2923.021 and need not be included within the indictment for the completed offense. Rather, if during the course of trial the defendant presents sufficient evidence that his conduct was unsuccessful in constituting the indicted offense, an instruction to the jury on attempt would be proper.")  Furthermore, Crim.R. 31(C) provides that a "defendant may be found not guilty of the offense charged but guilty of an attempt to commit it if such an attempt is an offense at law."  *Accord State v. Russell,* 2000 Ohio App. LEXIS 4852, *9-14 (2d Dist. Oct. 20, 2000) (holding that the trial court was allowed to permit amendment of the indictment to charge the defendant with an attempt to commit the specific offense with which he was originally indicted without violating Crim.R. 7[D]); *State v. Burnside*, 2009-Ohio-2653, ¶ 7-8 (7th Dist.).

{¶ 34} In any event, I note that while the complaint explicitly charged Faircloth with theft by deception in violation of R.C. 2913.02(A)(3), it also explicitly charged her with "*attempt*[*ing*] to commit theft by deception of merchandise," which it alleged she did when

---

8. For example, Faircloth's act of deception did not result in her being allowed to leave the story with the rug; nor did it result in her being provided with the cash equivalent of the rug's value while in the store.

she "removed an item from the store shelf, did not purchase the item, and *attempted* to deceive employees by returning it." (Emphasis added.)

{¶ 35} I disagree with the majority's sufficiency analysis, which I read as assuming that merely because there was evidence that Faircloth obtained or exerted control over the rug, and because there was evidence that Faircloth at that point in time intended to deceive Walmart, the factfinder did not err in convicting her of violating R.C. 2913.02(A)(3). This analysis seems to overlook the statutory text, which expressly provides that the act of deception must be the means "by" which the person obtained or exerted control over the property. In other words, the statute requires not simply that the offender exert control over property while having the intent to commit deception, but requires obtaining control over the property "by" means of deception.

{¶ 36} The majority opinion cites *State v. Keith*, 2008-Ohio-348 (12th Dist.), for the proposition that the state could prove theft by deception through evidence establishing "that the defendant had the intent to permanently deprive the owner of the property at the time appellant obtained control over it." *Id*. at ¶ 21. This quote from *Keith* implies that the state need not prove that an act of deception occurred in conjunction with obtaining or exerting control over the property. The quote suggests that simply having a guilty mind state at the time of obtaining possession would establish the offense. But the majority opinion did not quote the first sentence from the same paragraph in *Keith*, which lists the following elements of the offense: "Thus, in order to prove theft by deception, the state needed to prove that appellant **(1) knowingly obtained control over the property (2) by knowingly deceiving** (3) with the purpose of depriving the owner of the property." (Boldface added.) *Id*. The sentence of *Keith* that the majority cites is simply an imprecise and inaccurate summary of the very elements laid out in the immediate prior sentence in *Keith*. The majority also cites *State v. Wilson*, 2007-Ohio-5187 (12th Dist.), describing

that case as standing for the proposition that "theft by deception requires obtaining control over property with the purpose of depriving the owner of the property through the means of trickery." (Majority Opinion at ¶ 10.) But I read *Wilson* differently, as *Wilson* applies the same nexus requirement between obtaining control of property and the act of deception that I apply here. *Wilson* at ¶ 9 (explicitly stating that R.C. 2913.02[A][3] "provides that no person shall, with purpose to deprive the owner of property or services, knowingly obtain or exert control over property or services *by deception.*") (Emphasis added.).

{¶ 37} The majority opinion also implies that my analysis "places an unnecessary burden on Wal-Mart's [sic] customer service associates—essentially elevating entry level employees to store detectives—by requiring them to sniff out unlawfully deceptive schemes like the one executed by Faircloth in this case." I do not agree with this characterization of my analysis, but even if it were correct, my analysis merely applies the words the General Assembly enacted in the text of the statute. If the statute has an ill effect, the General Assembly can amend the statute. In any event, it is for an employer to decide what actions it should require, permit, or prohibit its employees from taking with regard to confronting potential thieves, and a holding that the state only proved attempted theft by deception in this case would be unlikely to impact such decisions. The majority also states that "Despite the implication from the dissent's reasoning, store employees must not be required to let merchandise be possessed outside the store before confronting someone in the middle [of] a theft offense." I have stated nothing of the sort, and I do not believe the statute requires store employees to wait until someone committing a theft offense is leaving the store to confront them. On the contrary, the Walmart employees in this case appropriately confronted Faircloth while still in the store for her criminal offense of attempted theft. My analysis turns not on whether Faircloth

successfully deceived anyone or when she was confronted by Walmart employees, but rather on whether she obtained or exerted control over property "by deception." She did not do so when she put the rug in her cart, but she did attempt to do so when she attempted to convince someone at the customer service desk to either give her $95 cash or allow her to take the rug from the store, and it is for that attempted crime that she should be convicted.

{¶ 38} It is easy to imagine other scenarios in which a customer may be confronted for a perceived violation of R.C. 2913.02(A) prior to the customer leaving the store, including for deceptive acts that violate R.C. 2913.02(A)(3). For example, a customer who, as in *Cleveland v. Flynn*, 2018-Ohio-3585, hid video games under her coat would have obtained or exerted control over the property by a deceptive act and could be convicted under R.C. 2913.02(A)(3) even if store personnel confronted and stopped the customer before the customer left the store.

{¶ 39} I would therefore sustain Faircloth's Assignment of Error No. 1, vacate Faircloth's theft conviction, dismiss Assignment of Error No. 2 as moot, and remand for the trial court to enter a conviction for attempted theft by deception, and for sentencing and such other further proceedings as may be appropriate.